█ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE HENDERSON, Appellant. [990 NYS2d 214]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Griffin, J.), rendered January 26, 2012, convicting him of attempted murder in the second degree and assault in the first degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

The defendant was convicted, after a jury trial, of attempted murder in the second degree and assault in the first degree (two counts), based upon allegations that, on January 9, 2010, the defendant, then age 15, and his codefendant attacked the complainant with a knife, in apparent retaliation for the complainant's act of "snitch[ing]" to his own mother that the defendant and the codefendant used marijuana. The defendant raised, among others, a defense of diminished capacity.

During the voir dire, defense counsel raised a *Batson* challenge (*see Batson v Kentucky*, 476 US 79, 94-98 [1986]) after the prosecutor used two peremptory challenges against female black prospective jurors. The prosecutor noted that two other female black prospective jurors had been seated as jurors. The trial court acknowledged that "[i]t is a weak challenge," but asked the prosecutor for explanations for the challenges. The prosecutor stated that the first black prospective juror "offered no opinions," and the second black prospective juror has a "visible reaction [of] nodding to all of [defense counsel's] questions." The trial court concluded that the explanations were not pretextual, and denied the challenge.

A determination as to whether a race-neutral reason is pretextual is a pure issue of fact vesting the trial court with broad discretion to determine credibility (*see People v Hecker*, 15 NY3d 625, 656 [2010]), especially where the reason is based upon the body language and demeanor of the juror, which is not apparent from a cold record (*see People v Morgan*, 24 AD3d 950, 952 [2005]). The trial justice, who was in the best position to do so, determined that the prosecutor's reasons were not pretextual.

In *People v Hecker* (15 NY3d 625, 660 [2010]), the Court of Appeals ruled that the strength or paucity of the challenging party's initial showing is "a factor that should be considered in determining whether the record as a whole supports a finding of pretext." In this case, the court acknowledged that the alleged prima facie showing was weak, since black jurors were selected, including two black women. Accordingly, the defendant's *Batson* challenge was properly rejected by the trial court.

Pursuant to CPL 270.15 (1) (c), the scope of counsel's exami-

nation of prospective jurors "shall be within the discretion of the court." However, any restrictions imposed on voir dire must "afford defense counsel a fair opportunity to question prospective jurors about relevant matters" (*People v Jean*, 75 NY2d 744, 745 [1989]). Here, the trial court afforded defense counsel a fair opportunity to question prospective jurors about relevant matters, including their general attitudes toward individuals with mental illness.

However, we conclude that the judgment of conviction must be reversed on the ground that the defendant was deprived of the effective assistance of counsel. "In determining whether a defendant has been deprived of effective assistance, a court must examine whether 'the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation' " (*People v Oliveras*, 21 NY3d 339, 346 [2013], quoting *People v Baldi*, 54 NY2d 137, 147 [1981]). Although the defendant bears the burden of demonstrating the absence of strategic or other legitimate explanations for counsel's performance, defense counsel's strategic decisions must be consistent with that of a " 'reasonably competent attorney' " (*People v Benevento*, 91 NY2d 708, 712 [1998], quoting *People v Satterfield*, 66 NY2d 796, 799 [1985]). "A defendant's right to effective assistance of counsel includes defense counsel's reasonable investigation and preparation of defense witnesses" (*People v Jenkins*, 84 AD3d 1403, 1408 [2011]). In this case, defense counsel failed to meet that standard.

At the trial, the defense raised, inter alia, the defense of diminished capacity. In support of that defense, the defense called as a witness a licensed physician who was an expert in child and adolescent psychiatry and forensic psychiatry. The expert noted that, in 2008, the Family Court, Kings County, placed the defendant in Tryon Residential Center, a residential center for psychiatric treatment of adolescents and children. However, he was not placed on psychotropic medication until he was arrested for the instant offense. The expert diagnosed the defendant as suffering from schizophreniform disorder, which was exacerbated by his use of marijuana. The expert further stated that the defendant's conduct during the course of the crime was "bizarre" and consistent with actions taken by someone suffering from schizophreniform disorder. As evidence of the defendant's lack of intent, the expert cited the random nature of the complainant's stab wounds.

However, on cross-examination, the expert acknowledged that he never reviewed the photographs of the complainant, or the

complainant's medical records. The expert acknowledged that he relied upon the defense counsel's statement that the stab wounds "were all over the place." The expert further acknowledged that he was never informed that a motivation for the defendant's conduct may have been the complainant's "snitching." He further acknowledged that this information could have changed his opinion, and was something he would have wanted to explore further. In summation, defense counsel drew the jury's attention to the expert's lack of preparation, when she argued that she never showed the expert the photographs of the complainant's injuries because the expert was not hired "as a medical doctor—even though he was a surgeon," and the expert was not there to diagnose the complainant's injuries.

The People argue that defense counsel limited disclosure of information to her own expert as a trial strategy, because if the expert knew all the facts, he "could not have testified in a manner helpful to the defense." However, the defendant had a psychiatric history, and there was evidence in the record that he favorably responded to psychotropic medication. The expert's explanation of the significance of these facts would have formed an adequate defense. Further, assuming that the expert, if fully informed, would not have an opinion favorable to the defense, defense counsel could have chosen not to call him as a witness, and instead relied on the record of the defendant's psychiatric history and the defendant's own testimony that he "blacked out" during the crime.

The so-called strategic decision to withhold information from the expert allowed the prosecutor to demonstrate to the jury that the expert was ill-informed. Further, defense counsel's explanation during summation for her failure to disclose the nature of the complainant's injuries to the expert was not logical and indicated that the failure to disclose was intentional, and possibly misleading. Assuming that the failure to disclose was a strategic decision, it was not consistent with the actions of a reasonably competent attorney.

In view of the foregoing, defense counsel did not provide the defendant with meaningful representation. Accordingly, we reverse the judgment of conviction and order a new trial.

In light of our determination, we need not consider the defendant's remaining contention. Eng, P.J., Austin, Hinds-Radix and LaSalle, JJ., concur.