■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL SANCHEZ, Appellant. [1 NYS3d 266]—

Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Zambelli, J.), rendered April 24, 2012, convicting him of murder in the first degree (five counts), attempted murder in the second degree (four counts), assault in the first degree (four counts), criminal possession of a weapon in the second degree (five counts), robbery in the first degree, and burglary in the first degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress statements to law enforcement officials.

Ordered that the judgment is affirmed.

The defendant and several accomplices entered an apartment looking for someone who had allegedly interfered with their drug dealings, and demanded money after threatening to kill everyone in the apartment. Two male occupants of the apartment were shot and killed, and the defendant was among the shooters. Four other occupants of the apartment were also shot, though not fatally, including a teenage girl and a five-year-old child. Three of the surviving victims identified the defendant because they knew him. Upon his arrest, and after the administration of *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]), the defendant ultimately admitted his participation in the crime orally and on videotape.

In response to the defendant's motion to suppress his statements to law enforcement officials, the Supreme Court conducted a pretrial *Huntley* hearing (*see People v Huntley*, 15 NY2d 72 [1965]) to determine whether the defendant's confession was given voluntarily and in accordance with his Fifth and Sixth Amendment rights. At the conclusion of the hearing, the court held that the defendant had not unequivocally invoked the right to counsel, and that his various inculpatory statements had been voluntarily uttered upon his waiver of his *Miranda* rights.

On January 12, 2012, just before jury selection was to commence, the defendant entered a plea of guilty to all counts of the indictment, which included five counts of murder in the first degree, four counts of attempted murder in the second degree, and related charges, with the understanding that he would be sentenced to maximum concurrent sentences of life imprisonment without parole upon the convictions of murder in the first degree, and maximum sentences on the convictions of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree, robbery in the first degree, and burglary in the first degree, to run consecutively to the sentence imposed upon the convictions of murder in the first degree. At sentencing, the sentences imposed upon the defendant's convictions of assault in the first degree, criminal possession of a weapon in the second degree, and robbery in the first degree were made to run concurrently with the five concurrent terms of life imprisonment imposed upon the convictions of murder in the first degree and the four consecutive terms of imprisonment of 25 years imposed upon the convictions attempted murder in the second degree. This appeal brings up for review issues of suppression, effectiveness of counsel, and excessiveness of sentence.

The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress the state-

ments he made to the arresting detectives during a second interview with those detectives, which he specifically requested only hours after denying his involvement in the shootings during a prior interview with them. The evidence at the suppression hearing included a videotape of the second interview, which established that, after the defendant was read his *Miranda* rights, his statements reflected his desire to speak to the lawyer from the District Attorney's office who was going to prosecute him, and not a lawyer who might potentially represent him. Thus, the defendant's request to the interviewing detectives did not constitute an unequivocal invocation of the right to counsel preventing further interrogation (*see Miranda v Arizona*, 384 US 436 [1966]). The record also shows that the detectives explained at length that they could not promise the defendant a plea deal, and reflects that his inculpatory statements were spontaneously made after he acknowledged receiving his *Miranda* rights in writing and waiving such rights intelligently, knowingly, and voluntarily (*see People v Williams*, 97 AD3d 769, 769-770 [2012]; *People v Gega*, 74 AD3d 1229, 1230-1231 [2010]; *People v Jackson*, 43 AD3d 1181, 1182 [2007]).

There is no merit to the defendant's contention that his entry of a plea of guilty to all counts of the indictment while represented by counsel, despite counsel's knowledge that the court would impose maximum sentences on each, should be viewed as ineffective assistance of counsel "per se." No decisional authority recognizes a per se standard in a plea proceeding, and we examine the issue with reference to counsel's overall performance under both the federal standard (*see Strickland v Washington*, 466 US 668 [1984]) and the New York standard (*see People v Baldi*, 54 NY2d 137 [1981]). Both standards entail a two-part test, and the first prong under both is the "objective reasonableness standard," as set forth in *Strickland v Washington* (466 US at 688; *see People v Bassi*, 111 AD3d 845, 846 [2013]; *People v Georgiou*, 38 AD3d 155, 160-161 [2007]). The second prong of the federal standard requires a showing of prejudice (*see Strickland v Washington*, 466 US at 687), i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. The second prong of the New York standard contains a prejudice component focusing on the fairness of the process as a whole rather than the particular impact of counsel's alleged ineffectiveness on the outcome of the case (*see People v Benevento*, 91 NY2d 708, 714 [1998]; *see also People v Caban*, 5 NY3d 143, 156 [2005]; *People v Bassi*, 111 AD3d at 846). In the context of a plea of guilty, the prejudice prong focuses upon whether counsel's ineffective performance affected the outcome of the plea process (*see Hill v Lock-*

*hart,* 474 US 52, 53 [1985]; *People v McDonald,* 1 NY3d 109, 114 [2003]). A defendant bears the burden of establishing that he or she was deprived of the effective assistance of counsel by showing the absence of strategic or other legitimate explanations for counsel's performance (*see People v Flores,* 84 NY2d 184, 186 [1994]; *People v Henderson,* 118 AD3d 1020, 1023 [2014]).

At the time of the entry of the defendant's plea, the defendant insisted on speaking for himself and pleading guilty to each count of the indictment over defense counsel's stated objection to such a plea. Specifically, counsel interjected: "I object to that[,] [that] [h]e'll plead guilty to each count of the indictment." In response, the defendant stated three times that he was "not hesitating," and seven separate times said he was pleading "guilty." The defendant acknowledged four separate times his understanding that he would receive the maximum sentence of life imprisonment without parole upon his convictions of murder in the first degree. Thereafter, a thorough allocution was made, pursuant to which the defendant admitted his guilt and again repeatedly acknowledged that he would receive the maximum possible sentence and never get out of jail for the rest of his life. The allocution entertained by the Supreme Court was careful and painstaking, and at one point during the proceedings the defendant appeared to lose patience with the court, saying "I understand. How many times [are] you going to say it? I understand." The defendant was careful during his colloquy with the court to gain the assurance, on more than one occasion, that he retained the right to appeal the court's adverse suppression ruling. The defendant also stated during his allocution that he had fully discussed the plea with counsel, and that he was satisfied with the legal advice he received from counsel. The court expressed its satisfaction that the defendant's plea of guilty was knowingly, voluntarily, and intelligently entered.

Counsel was not ineffective for two primary reasons. First, a defendant at all times retains the sole authority to decide whether or not to plead guilty (*see People v Colon,* 90 NY2d 824, 825-826 [1997]; *People v White,* 73 NY2d 468, 478 [1989]). Here, counsel, in addition to his advocacy of an omnibus motion and participation at a suppression hearing, objected on the record to the defendant's decision to plead guilty to all counts of the indictment, and explained to the defendant that the defendant's right to appeal the adverse suppression ruling would survive the plea. The court's discussion with the defendant regarding all aspects of the plea and sentences was careful, conscientious,

painstaking, complete, and reflective of the importance and solemnity of the proceeding. The defendant's argument on appeal, in essence, is that counsel was ineffective for not preventing him from entering a non-negotiated plea. However, the record makes clear that the defendant was insistent upon pleading guilty, with full knowledge and understanding of its ramifications, and regardless of whatever objections may have been interposed by counsel. A defendant, with exceptions not relevant here, has an absolute right under CPL 220.10 (2) to plead guilty to an entire indictment where, as here, the defendant acknowledges his or her guilt and the plea is knowingly and voluntarily entered (*see People v Rosebeck*, 109 AD2d 915, 916 [1985]).

Second, there appears to have been a strategic reason behind the defendant's entry of a non-negotiated plea of guilty. The defendant clearly expressed his desire to plead guilty in lieu of proceeding later that day to jury selection and trial. On two separate occasions, the defendant specifically articulated that his primary concern was to mount a successful appellate challenge to the Supreme Court's suppression ruling, and he made clear his understanding that, if the suppression ruling were reversed on appeal, he would return to the Supreme Court for trial. Although defense counsel stated on the record that the anticipated appeal was a "gamble," the defendant's strategy of entering the plea appears to have been effectuated to avoid a trial where his admissions would be in evidence, in the hope that, upon a future trial, such evidence would by then have been suppressed by this Court. Moreover, in the event any witnesses would be unavailable for a second trial, it would be to the defendant's strategic advantage to avoid preservation of their testimony at a first trial.

Under the circumstances of this case, involving a home invasion, two murders, and the shooting of multiple innocents, including a small child, it cannot be said that the sentences imposed were excessive (*see People v Farrar*, 52 NY2d 302, 305 [1981]; *People v Suitte*, 90 AD2d 80 [1982]). Dillon, J.P., Dickerson, Austin and Cohen, JJ., concur.